IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JENNIFER L. MYERS,<br><br>            Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | CASE NO. 3:24-cv-1390<br><br>DISTRICT JUDGE<br>JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Jennifer Myers filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. For the reasons stated below, I recommend that the District Court remand the Commissioner's decision.

**Procedural history**

In August 2022, Myers filed an application for disability insurance benefits alleging a disability onset date of October 2019,[1] later amended to March 21, 2019, and claiming she was disabled due to complex regional pain

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

syndrome and scoliosis. Tr. 155, 188, 210. The Social Security Administration denied Myers's application and her motion for reconsideration. Tr. 70, 82. Myers then requested a hearing before an Administrative Law Judge (ALJ). Tr. 106.

In July 2023, an ALJ held a hearing. Myers and a vocational expert testified. Tr. 34–62. The next month, the ALJ issued a written decision finding that Myers was not disabled. Tr. 10–22. The ALJ's decision became final on June 24, 2024, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Myers filed this action on August 14, 2024. Doc. 1. She asserts the following assignments of error:

> 1. The ALJ's finding that there are a significant number of jobs [in] the national economy which Plaintiff is capable of performing is not supported by substantial evidence.
>
> 2. When U.S. Census Bureau and U.S. Bureau of Labor Statistics data, in conjunction with the ALJ opinion, evidences that Plaintiff is only capable of performing 0.0125% of the jobs in Northwest Ohio, thus being precluded from 99.99% of jobs in the region, there are not positions in "significant numbers" existing in the national economy, under 20 CFR 404.1566(a), which Plaintiff is capable of performing.

Doc. 7, at 2.

**Hearing testimony**[2]

A vocational expert testified at Myers's administrative hearing. Tr. 53. The ALJ discussed with the vocational expert Myers's past work. Tr. 54–56. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Myers could perform Myers's past work if the individual had the limitations assessed in the ALJ's Residual Functional Capacity (RFC) determination, described below. Tr. 56–58. The vocational expert answered no. Tr. 58. The ALJ asked if the individual could perform any other work. Tr. 58. The vocational expert said that such an individual could perform the following jobs in the national economy: usher (about 8,400 jobs); children's attendant (about 5,600 jobs); and furniture rental clerk (about 4,500 jobs). Tr. 58–59. Then the following exchange occurred:

> [ALJ] Q: I need you to give me a few more, please.
>
> [vocational expert] A: Sure …. And I'll do it backwards. I will give you other examples, but I think in total, there would be between 35,000 to 40,000 positions in the national economy. An additional example would be a striping machine tender, 669.685-102, and approximately 2,200 positions.

Tr. 59.

The ALJ asked the vocational expert about a few other hypothetical RFC

---

[2] Myers only challenges the sufficiency of the ALJ's determination that there was a significant number of jobs that Myers could perform. Doc. 7 at 2. So this report only includes hearing testimony relevant to that issue.

3

limitations. Tr. 59–61. The ALJ then asked Myers's attorney if he had any questions for the vocational expert. Tr. 59–61. Myers's attorney said that he did not and that he was "satisfied" with the vocational expert's testimony. Tr. 61.

**The ALJ's decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of March 21, 2019, through her date last insured of June 30, 2023, and any work was an unsuccessful work attempt (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: mild degenerative disc disease of the lumbar and thoracic spine with scoliosis of the lumbar and thoracic spine; moderate partial-thickness tear of the left extensor pollicis longus at the level of the metacarpophalangeal joint; status-post surgical repair of the left thumb extensor tendon injury; status-post surgical release of the left first dorsal extensor compartment due to De Quervain's; status-post fusiform excision of the non-healing wound; and adhesive capsulitis, left shoulder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; frequently stoop and kneel; occasionally reach, handle, finger, and feel with the left upper extremity; never lift more than eight pounds with her left upper extremity; and never be exposed to hazards such as moving machinery, unprotected heights, or commercial driving.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [i]n … 1985, and was 38 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 21, 2019, the alleged onset date, through

>June 30, 2023, the date last insured (20 CFR 404.1520(g)).

Tr. 12–22.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

>1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
>2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
>3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
>4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.*

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

7

**Discussion**

Myers argus that the ALJ's finding that Myers can perform a significant number of jobs in the national economy is not supported by substantial evidence. Doc. 7, at 2.

Neither Congress, the Commissioner, nor the courts have defined the term "significant" in the context of Social Security job numbers. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Rather, the ALJ makes this determination on a case-by-case basis. *Id.* (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Courts review for substantial evidence the ALJ's significant-number finding by determining whether it "fits comfortably within what this court and others have deemed 'significant.'" *Id.* (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (concluding that 6,000 jobs was a significant number based on the job numbers in other cases in the Sixth Circuit and in other circuits)).

At the administrative hearing, the vocational expert testified that there were four jobs that Myers could perform: usher (8,400 national jobs); children's attendant (5,600 national jobs); furniture rental clerk (4,500 national jobs); and striping machine tender (2,200 national jobs). Tr. 58−59. All of these jobs add up to 20,700 jobs in the national economy, and the ALJ in her decision relied on these jobs. Tr. 21−22.

Myers argues that the ALJ's finding that Myers can perform the striping machine tender job is erroneous because it contradicts the ALJ's RFC and

8

hypothetical directed to the vocational expert that Myers have no exposure to moving machinery.³ Doc. 7, at 3–4, 12. When performing the striping machine tender job, an individual:

> [t]ends machines in tandem that groove, paint, seal, and dry surfaces of hardboard panels: Positions grooving blades and striping wheels according to panel specifications, using handtools and tape measure. Pours paint and sealer into designated reservoirs to supply coating rollers and wheels. Moves controls on console panel to start and synchronize machines. Inspects and feels finished panels, and adjusts controls to conform with production specifications.

*See* Dictionary of Occupational Titles, Fourth Edition, Revised 1991, DOT 669.685-102, *Groover-and-Stripper Operator*, 1991 WL 686064. The job requires occasional exposure to moving mechanical parts. *See id.*

The Commissioner makes only one argument in response to this issue. Doc. 9, at 6–7. Citing no authority, she asserts that Myers's "lay assessment that the requirements of this job require exposure to the types of hazardous or moving machinery contemplated by the RFC limitation at issue is not enough to overcome the VE's testimony." Doc. 9 at 7. Breaking down this statement

---

³ At the administrative hearing, Myers didn't ask the vocational expert any questions or challenge the jobs that the vocational expert identified. But the Commissioner in her brief hasn't argued that Myers has waived this issue. So the Commissioner has forfeited any argument that Myers has waived her challenge to the striping machine tender job. *See United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009) ("We have held that 'as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion.'") (quoting *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998)).

reveals three problems with the Commissioner's argument. First, the Dictionary of Occupational Titles description of striping machine tender includes exposure to "moving mech[anical] parts." *See* DOT 669.985-102, 1991 WL 686064. So as to the job requirements, Myers has more than a "lay assessment" in her favor. Second, the Commissioner does not contend—let alone cite authority—that the *moving machinery* and *moving mechanical parts* restrictions are materially different. Facially they are materially similar and, as stated, the Commissioner has not asserted otherwise.[4] Third, contrary to the Commissioner's suggestion, Doc. 9 at 7, the ALJ did not elaborate anywhere in her decision anything about the "types of hazardous or moving machinery" that she intended her RFC to cover. This Court takes the ALJ's words at face value: the ALJ found that Myers cannot be exposed to *moving machinery*, Tr. 15, 56, and the striping machine tender job requires exposure to *moving mechanical parts*. So Myers has shown that the ALJ's finding—that Myers can perform this job—is not supported by substantial evidence. *See Jordan*, 548 F.3d at 423 (the Commissioner has the burden at step five "to prove the availability of jobs in the national economy that the claimant is

---

[4] The Dictionary of Occupational Titles evaluates potential exposure to *moving mechanical parts* but there is no separate category for potential exposure to *moving machinery*. *See, e.g.*, DOT 669.985-102, 1991 WL 686064; *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix D-2, U.S. Dept. of Labor (1993).

capable of performing."); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987) ("Substantial evidence must support a finding that the claimant has the vocational qualifications to perform specific jobs.") (citing *Richardson v. Sec'y of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)).

The Commissioner submits that even if this Court accepts Myers's argument eliminating the striping machine tender job, "it only reduces the number of jobs available by 2,200," with "is too inconsequential to be dispositive."[5] Doc. 9 at 7. Without the striping machine tender job, the vocational expert identified three jobs in the national economy totaling 18,500. Tr. 58–59. And this number, the Commissioner asserts, is within the range of numbers in other cases that the Sixth Circuit has found to be significant. Doc. 9 at 8–9.

But at the hearing, the vocational expert identified the three jobs with numbers totaling 18,500 and concluded, "those are three representative examples of unskilled, light jobs that could be done that are out there." Tr. 59. The ALJ said, "I need you to give me a few more, please." Tr. 59. The vocational expert replied, "Sure," and then identified the striping machine tender job, with 2,200 positions. Tr. 59. Myers submits that this exchange—the ALJ

---

[5] The Commissioner's argument that 2,200 jobs is "too inconsequential to be dispositive," Doc. 9 at 7, is surprising because the Commissioner also cites a case finding that 2,000 was a "significant" number of jobs and therefore dispositive at step five, *id.*, at 8 (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)).

11

stating that she needed more jobs—shows that the ALJ wasn't satisfied that the 18,500 jobs that the vocational expert had identified constituted a *significant* number. Doc. 7 at 11.

The Commissioner asserts that Myers's argument as to what the ALJ meant when she asked for more jobs is "speculati[ve]." Doc. 9 at 5. "An equally plausible explanation," the Commissioner contends, "is that the ALJ wished to provide even more support than [s]he already had for h[er] step five conclusions." *Id*. I do not find the Commissioner's version to be "equally plausible." Taking the ALJ's words at face value, the ALJ stated that she "need[ed] … [a few more]" than the three jobs totaling 18,200 positions that the vocational expert had identified. Tr. 59. This indicates that the ALJ was not satisfied that those 18,200 jobs were *significant*. And while courts *evaluate* the ALJ's significant-job-numbers finding by looking at what other courts have deemed significant, "the ALJ must make the determination" as to what is a "significant" number of jobs "on a case by case basis." *See Moats*, 42 F.4th at 563. Here, the transcript and the ALJ's decision shows that she found 20,700 jobs to be a significant number, not that she found 18,200 jobs to be a significant number. Tr. 58−59, 21−22.

Finally, the Commissioner argues that the vocational expert estimated that there were between 35,000 to 40,000 total positions in the national economy that Myers could perform, including the four specific jobs that the vocational expert identified. Doc. 9 at 6−7, Tr. 59 (vocational expert explaining,

12

"I think in total, there would be between 35,000 to 40,000 positions in the national economy."). And 35,000 to 40,000 positions, the Commissioner asserts, constitutes "a significant number." Doc. 9 at 7. This argument poses two problems. First, as Myers points out, given the mistake as to the striping machine tender job, it is unknown how many of the 35,000 to 40,000 jobs would be similarly eliminated, since the vocational expert didn't identify the titles of any of these jobs.

Second, the ALJ misconstrued the vocational expert's testimony as to these un-named jobs. At the administrative hearing, the ALJ asked the vocational expert if an individual with Myers's RFC could perform any jobs, Tr. 56–58, and the vocational expert identified three jobs totaling 18,500 positions. Tr. 58–59. The ALJ asked for "a few more" jobs, and the vocational expert stated:

> Sure …. And I'll do it backwards. I will give you other examples, but I think in total, there would be between 35,000 to 40,000 positions in the national economy. An additional example would be a striping machine tender, 669.685-102, and approximately 2,200 positions.

Tr. 59. But in her decision, the ALJ wrote,

> The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of light, SVP 2, unskilled representative occupations such as usher, DOT # 344.677-014, with 8,400 jobs in the national economy; children's attendant, DOT # 349.677-018, with 5,600 jobs in the national economy; furniture rental clerk, DOT # 295.357-018, with 4,500 jobs in the national economy; and striping machine tender,

13

> DOT # 669.685-102, with 2,200 jobs in the national economy. The vocational expert testified that these were representative SVP 2 light jobs *and that there were other jobs, approximately 35,000-40,000 jobs nationally, as well that would be in this category* that the claimant could perform (Hearing).

Tr. 21–22 (emphasis added). In other words, the ALJ misunderstood the vocational expert as having stated that there were 20,700 specific jobs *plus* 35,000 to 40,000 other jobs. But the vocational expert stated that there were 35,000 to 40,000 *total* jobs. The Commissioner concedes that the ALJ "misinterpreted th[is] testimony." Doc. 9 at 6. The ALJ's error means that the vocational expert's high-end estimate was 40,000 jobs, but the ALJ thought that the vocational expert's high-end estimate was 60,700 jobs. So the ALJ's reliance on up to 60,700 total jobs is not supported by substantial evidence.

It is true, as the Commissioner points out, that the Sixth Circuit in published and unpublished decisions has found that a lesser number of jobs than the 18,200 jobs here were "significant." Doc. 9 at 8 (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs), and *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (2,000 jobs)). But "in the context of this case only," *see Hall*, 837 F.2d at 275, Myers has shown that the ALJ has failed to meet her step-five burden. The testimony at the administrative hearing indicates that the ALJ was unsatisfied with the vocational expert's initial job numbers; the ALJ found that Myers could perform an additional job that Myers cannot perform, which drops the job numbers back down to the initial number that the ALJ was unsatisfied with;

14

and the ALJ misconstrued the vocational expert's estimation of total, unspecified jobs. I therefore recommend that the Court find that Myers has shown that the ALJ's step five determination is not supported by substantial evidence, and that this case should be remanded for further consideration.[6]

**Conclusion**

For the reasons explained above, I recommend that the Court remand the Commissioner's decision.

Dated: January 21, 2025

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

---

[6] Myers also argues that, based on her mathematical calculations using 2020 United States Census data and Bureau of Labor Statistics as applied to the vocational expert's job numbers, the percentage of available jobs in her local area would much smaller. Doc. 7 at 15–16. She provides no legal authority for this argument. *Id.* This approach has been rejected by the Sixth Circuit. *See Hall*, 837 F.2d at 274–75 (rejecting the plaintiff's percentage-based approach indicating a reduced number of local jobs: "In defining disability within the meaning of the Act, Congress spoke in terms of numbers, not of percentages …. [W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area."); *see also Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area.").

15

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 53–31 (6th Cir. 2019).